## GREGG COMPANY, LTD., Plff.,

### v.

## UTUADO SUGAR COMPANY, Dft.

---

San Juan, Equity, No. 898.

ON REPORT OF STANDING MASTER AS TO PETITION OF CARLOS CABRERA FOR RENEWAL OF LEASE.

Receivership—Standing Master—Reference.

   1. Where a matter has not been referred to a master by order of the court, his consideration thereof, unless it has been by consent, is *ex parte*.

---

NOTE.—As to relation of bankruptcy law to assignments and insolvency proceedings under state laws, see note in 45 L.R.A. 177.

Gregg Co. v. Utuado Sugar Co.

Receivership.

> 2. A receivership is simply for the purpose of holding the property intact until the situation which has created the embarrassment is relieved or until the parties can have adjudicated between themselves to whom the property belongs.

Receivership—Bankruptcy.

> 3. Where property is in receivership in one court it cannot usually be put in bankruptcy by another court.

Opinion filed June 15, 1915.

_____

*Mr. F. H. Dexter* for receiver.

*Mr. C. Coll y Cuchi* for defendant.

*Mr. Chas. Hartzell* for various creditors.

*Mr. R. Diaz Collazo* for Luis Iglesias.

HAMILTON, Judge, delivered the following opinion:

1. This matter comes up on the report of Standing Master Dabney on a petition of Carlos Cabrera for a renewal with certain changes of the lease under which he has been operating the Utuado property for the past season. It would seem that there is no order of court referring this petition to the master, and so his consideration, unless it was a consent matter, which is not shown by the report, would be *ex parte*. The object of having a standing master is for everybody to be notified, so that anyone feeling that he is aggrieved can except and bring particular matters before the court, but not for a matter to be precipitated and dropped on the court and then people to be summoned in to find out what they think of the master's report.

Gregg Co. v. Utuado Sugar Co.

The procedure, therefore, as to this particular matter, while it is in perfectly good faith no doubt, is informal, and I can consider it only in an informal way. But it would seem that this is as good an opportunity as any to indicate the views of the court on the subject; so that when it goes back to the master for formal report, it may perhaps be a formal matter.

It would seem that there are present before the court this morning most of the parties in interest. The receiver himself is here. I do not know who represents the complainant, and I do not know whether it is present or not. But the principal creditors are represented. Lascelles and Armstrong are here, and both have been before the court in a number of matters and are large creditors. Mr. Cabrera is present by counsel, not only as to his proposition for renewal of the lease, but as a holder of receiver's certificates. Mr. Iglesias is represented, and, as I understand it, all parties who are present in court this morning, mentioned above, except the receiver, agree that this lease or something similar to it is the best solution of the problem before the court. So that in this view of it the court is freer to express what seems to be best.

2. In the first place, it goes without saying, because it has been said so often, that a receivership is simply a temporary condition. It is so in every court, and certainly it would be enforced in that manner in this court. It is simply to hold the property intact until some situation which has created embarrassment is relieved, or until the parties can have adjudicated between themselves to whom the property belongs and what should be done with it. It has been held that when property is in receivership it cannot usually be put in bankruptcy. The fact that it is in the possession of one court would prevent an-

Gregg Co. v. Utuado Sugar Co.

other court, usually, even a bankruptcy court, as a matter of courtesy between them, from interfering. The alternative of a receivership, of course, is bankruptcy, and if a court finds that a receivership cannot be worked out in any way, a Federal court at least, it must be its duty in some form or other to dispose of the property, either by turning it over to bankruptcy or by making a similar disposition of the property in the receivership proceedings. The choice between the two would be perhaps a matter of discretion and a matter of considerable thought, but the point to be emphasized is that in any event this receivership, like all others, is to be temporary. There must be some termination to it.

3. In the second place, the actual problem before the court is not quite so simple. It is not as if a business man was sitting down and making his choice between two possible courses of action the solution of which is dependent on him alone and where he himself makes or loses. That is not the situation of a court. It has the interests of all parties before it, and that is the reason very likely that courts often go so slow. They want to be sure of each step as it may fall. The situation at present in regard to Utuado is that it has been in receivership for probably three years, and there seems to be no immediate prospect, or at least there has been no prospect for some time that it would pay out. At the same time there are a great many intricate questions as to the relative standing of the claims that will have to be settled before the court could properly let go, even if it wanted to. As was remarked, by a President, I think, on one occasion, the question before us right now is a condition, not a theory. It is not an abstract question of whether a receivership or a bankruptcy is the best plan; but here is a receivership

that actually exists. Now what shall be done about it? It
seems to be admitted, and the court is convinced that if this
property was sold outright at present with the free sugar law
impending on the statute books, as it is right now, it would
produce practically nothing. That it would go to the bond-
holders or to somebody else, depending upon priorities, for a
very small sum of money; that it would practically be a sacrifice.
That is the condition before us. An alternative option is an
offer by a responsible man,—because the court has had dealings
with him in the past,—there is no question about his responsi-
bility, to handle the property for the next season on practically
the same basis as the past season, and there is probability of
even better results from the creditors' point of view. That is
the alternative before the court, and I do not think that the
court can hesitate as to its duty. If next season conditions would
be exactly the same as this, if I could sit here and say that the
next season would be no better or no worse, there would be no
object in going on; but the court cannot say that. Legislation
may be changed,—it is not for the court to speculate upon that,
of course,—but it may be. Certainly matters will be brought
to a focus one way or another by next March. That would be
in the middle or towards the end of the next season. It may
be better then. It certainly would hardly be worse than it is
now. The creditors will be no worse off then, except as to the
matter of interest, and, as stated above, a vast majority of the
creditors in this case wish to have this postponement. It would
hardly do for the court to say that it knows their interests
better than they do themselves, and their favoring this propo-
sition is very persuasive with the court. It must necessarily
be so. On the whole, therefore, as a matter of principle, it seems

Gregg Co. v. Utuado Sugar Co.

to the court better to make a satisfactory lease for another season rather than to sacrifice the property at present.

4. In the third place, however, that does not quite settle all the details. The court would like very much indeed in any rearrangement to secure some better adjustment of the past administration expenses. Precisely what they are I do not know. It was stated in argument to be $6,000, and it is no doubt more than that, $12,000 perhaps, but any way they amount to several thousand dollars. Some have been reduced out of the rents of the past year. If there is a possibility of any advance being made, if not at present, a few months hence, nearer the grinding season, so that the court obligations can be reduced materially, the court would very much prefer that. And in the reference to the master I would like the master to look into that phase of it. I do not at all say that it is a condition of leasing, but to see what can be done.

5. In the next place, if that cannot be done in full, I would like to have what receiver's certificates are outstanding renewed in some formal way. I do not know how these debts are evidenced, but they are due, and there ought to be some formal evidence of their being renewed or continued over, and not have any old receiver's certificate outstanding past due, if it can be put in a new shape. That ought to be done if possible. Incidentally there comes up this question. The receiver this morning has announced that he will resign. The court has already expressed its feeling of indebtedness to the receiver for his work during a very trying period. If, however, he wishes to be relieved, of course the court cannot object, and would not want to keep him when he thinks that he cannot render service satisfactory to himself. That would leave the matter of receivership

open. When this resignation comes in and this matter is referred to the master, the parties should agree upon some new receiver, and his salary, and other details of that sort; because the court can only act through a receiver. It cannot have creditors coming to the judge of the court, and cannot for that matter have the receiver coming to the judge of the court asking for instructions. The court is a dispenser of justice, but does not necessarily know very much about business. Any business may be brought into a chancery court by way of receivership, but that does not prove the judge knows anything at all about that business. That would make him know so much that he would probably not be on the bench. He would then be qualified to attend to every kind of business. There will, therefore, have to be a reference of this proposition back to the master to see that proper notice is given to everybody who is concerned to see what can be done in regard to the suggestions the court has made as to the contents of this proposition. The proposition as a whole strikes the court as very plausible, but I have not had an opportunity to examine the details of it.

6. So much for the reference of the lease matter to the master; but there is a second general subject which comes up incidentally to the report upon this particular lease; and one matter must not wait on the other. As has been suggested in argument and is fully indorsed by the court, it is necessary in this change of administration to have a full understanding of the condition of this receivership. Of course I do not mean as to the report of the receiver. He will make his final report and that will be passed on, as incident to his resignation. I do not mean that. But there must be an ascertainment of the debts of Utuado, and more particularly of the order in which they

Gregg Co. v. Utuado Sugar Co.

should be paid. The court's past experience is that this is a very intricate problem. The question is as to principles of equity and also of local law, and these must be worked out. It is one thing to say that this debt is correct and should be paid and that another debt is correct and should be paid. It is a very different thing to say which of those two debts shall have priority over the other, and the difficulty is multiplied when we have a hundred or two hundred claims. So that it is referred to the master to ascertain, state and report all claims against the Utuado Sugar Company and against this receivership, with their priorities and order of payment. There have been in the past two proceedings in the court in regard to receiverships: First, to ascertain the debts and whether they had a priority, and afterwards there has been a second reference to ascertain the priorities between these. This order now is meant to embrace both of those steps so far as they have not been already made. The master will of course not consider this as reopening anything that has been determined in the past, but as requiring a general classification of everything that has been done in the past in the way of stating and giving priorities to different claims. This latter will take some time, but the court would like the master to take up under this second general head of administration expenses and debts, and state and report them with their relative priorities, if there are any between them, as early as possible, so that they can be passed upon before the court goes into summer recess. The other claims could be reported later if it is impossible to get them in shape at present.

So, on the whole then there is a reference to the master for two or more purposes: First, as to this particular lease, so as to get it in formal shape after proper notice to everybody that

could have any interest in it. It may of course be reported in substantially the present shape. I am not controlling the work of the master in that; but it has been informal as to procedure heretofore. The second matter is as to the claims against the receivership and their priorities. And perhaps I should say a third reference is to ascertain, state and report all claims against the Utuado Sugar Company and their priorities.

It is so ordered.